UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN ANTHONY RODRIGUEZ,

        Petitioner,

                                                            No. 09-cv-15011

vs.

                                                            Hon. Gerald E. Rosen

CINDI S. CURTIN,

       Respondent.
_____/

**OPINION AND ORDER
DENYING THE PETITION FOR WRIT OF HABEAS CORPUS
AND DENYING A CERTIFICATE OF APPEALABILITY**

Petitioner Steven Anthony Rodriguez has filed a petition for the writ of habeas corpus, challenging his plea-based conviction for second-degree murder and his sentence of twenty to forty years. He claims that his trial attorney was ineffective, that the prosecutor abused her discretion by charging him as an adult, that certain Michigan statutes pertaining to juveniles are unconstitutional, and that his sentence was invalid. Petitioner waived review of these claims by pleading guilty and by agreeing to a sentence of twenty to forty years. Further, the state court's adjudication of Petitioner's claims was objectively reasonable. Therefore, he has no right to relief, and his habeas petition must be denied.

**I. Background**

Petitioner was charged in Wayne County, Michigan with two counts of first-degree murder. He was fifteen years old at the time. The charges arose from the slaying of Petitioner's acquaintance, nineteen-year-old Johnnie Culbert, on May 24, 2006, in Lincoln Park, Michigan. Although there was only one victim, the prosecutor charged Petitioner with two counts of

murder on the theory that Petitioner premeditated the murder and also was guilty of felony murder for having committed the murder during the commission of a larceny. The first-degree murder charges carried a mandatory penalty of life imprisonment without the possibility of parole.

### A. The Facts as Established at the Preliminary Examination

#### 1. Regina Whyte

Johnny Culbert's mother, Regina Whyte, testified at the preliminary examination that Petitioner and her son had been friends. At approximately 10:00 p.m. on May 24, 2006, her son was missing, and her son-in-law Wiley Morrell spoke to Petitioner to determine if he had seen Johnny. Petitioner told Mr. Morrell that he had been with Johnny and that Johnny had slipped, fallen to the ground, and hit his head on a rock. Petitioner explained that he had tried to help Johnny get up, but Johnny slipped again and fell into the creek. Johnny had reassured Petitioner that he was alright and that he planned to go to his girlfriend's house.

#### 2. Officer Ryan Hammerle

Officer Ryan Hammerle testified at the hearing that, on May 25, 2006, he was dispatched to a creek that runs behind a business at 858 Dix Road. He found a deceased man lying face up in the creek. There was a stick protruding out of the man's mouth and a large, open wound on the side of his head.

#### 3. Officer Paul Cochran

Police officer Paul Cochran testified that he was assigned to Lincoln Park High School on May 26, 2006, when Petitioner came to his office and stated that he needed to talk with Cochran. Petitioner asked Officer Cochran if he had heard what happened to Johnny Culbert.

When Cochran acknowledged that he had heard about Johnny, Petitioner stated that he did not want people to think he harmed Johnny simply because he was the last person to be seen with Johnny. Petitioner then explained that he, Johnny, and another student named Frankie Diaz had acquired some alcohol on the day in question and then gone down to the creek. Johnny was "buzzed" and fell on his side. He slapped Johnny on the face and woke him up. Johnny then informed him and Frankie that he was going to his girlfriend's house.

### 4. Sergeant Joseph Lavis

Sergeant Lavis testified at the hearing that some police officers took Petitioner out of school about 2:20 p.m. on May 26, 2006, and transported him to the police station where Lavis contacted Petitioner's father, Angel Rodriguez. Mr. Rodriguez came to the police department and was present when Sergeant Lavis and Detective Raymond Watters asked Petitioner to tell them what he knew about Johnny Culbert. Petitioner had explained that he, Johnny Culbert, and Frankie Diaz were drinking beer by the creek when Johnny passed out and fell over. Johnny had said that he was not injured and that he was going to see his girlfriend. The three of them parted ways at that point. Petitioner and Frankie went to Frankie's house, and they were under the impression that Johnny was going to his girlfriend's house.

Sergeant Lavis advised Petitioner during the interview that there were inconsistencies between what Petitioner had said and what other people had told Lavis. When he pointed out the inconsistencies, Mr. Rodriguez began to cry. Petitioner then lowered his head and stopped talking. Sergeant Lavis asked Mr. Rodriguez whether the detectives could speak with Petitioner alone. Mr. Rodriguez agreed to leave the room, and, in his father's absence, Petitioner stated that, if he told the truth, he would be locked up for the rest of his life. At that point, Petitioner's

3

status changed from being a witness to being a suspect.

Sergeant Lavis then permitted Mr. and Mrs. Rodriguez to speak with Petitioner privately. Sergeant Lavis subsequently advised the Rodriguez family that Petitioner was no longer free to leave. Shortly thereafter, at approximately 5:00 p.m., Sergeant Lavis advised Petitioner of his constitutional rights. Mr. Rodriguez and Lt. Ronald Szalay were present when Petitioner initialed each of the five constitutional rights on the departmental form to indicate that he understood his rights. Mr. Rodriguez and Petitioner also signed the advice-of-rights form. Petitioner indicated that he was willing to give up his right to remain silent, and neither he nor Mr. Rodriguez asked for an attorney. Mr. Rodriguez also did not ask Sergeant Lavis to cease questioning Petitioner at any point, but when Lieutenant Szalay began to speak to Petitioner, both Petitioner and his father began to cry, and Petitioner asked his father to leave the room. After his father left the room, Petitioner made an oral statement.

During a subsequent search of Petitioner's home, Sergeant Lavis seized the clothes that Petitioner had said he was wearing during the crime. There was suspected blood on Petitioner's tennis shoes.

### 5. Lieutenant Ronald Szalay

The trial court determined that, for purposes of the preliminary examination, Petitioner was properly advised of his constitutional rights and that he freely and voluntarily waived his rights. Lieutenant Ronald Szalay then testified that, as soon as Petitioner's father left the interview room at the police station, Petitioner blurted out, "It was self-defense." Petitioner went on to explain that he and Johnny Culbert had begun arguing while drinking beer by the creek. At some point, Johnny choked him. He punched Johnny, but Johnny went after him again, knocked

him to the ground, and continued to choke him. He (Petitioner) reached for a stick and shoved the stick in Johnny's mouth. When that did not stop Johnny, he reached for a larger stick and hit Johnny in the head "lots of times." During the fight, money fell out of Johnny's pocket. He picked it up and then went to Frankie's home to clean up. He gave some money to Frankie so that Frankie would keep quiet and not tell anyone about the incident.[1]

The parties stipulated at the hearing that the cause of death was multiple blunt force trauma to the head and that the manner of death was homicide. At the close of the hearing, the prosecutor moved to bind Petitioner over as charged on two counts of first-degree murder. The state district court judge found sufficient evidence of felony murder, but insufficient evidence of premeditated murder. As a result, the state district court bound Petitioner over on a charge of second-degree murder in lieu of premeditated murder on count one. The district court bound Petitioner over on felony murder, as charged, in count two.

### B. The Plea, Sentence, and Appeal

On the day set for trial, the prosecutor moved to reinstate the premeditated murder charge. The trial court granted the motion, but agreed to instruct the jury on second-degree murder and voluntary manslaughter, if the facts warranted it, as lesser-included offenses of first-degree murder. After a break in the proceedings, Petitioner pleaded guilty to second-degree murder, Mich. Comp. Laws § 750.317. He admitted at the plea proceeding that he struck Johnny Culbert a number of times on the head and that he had intended to kill Johnny, to cause great bodily harm, or to create a high risk of death or great bodily harm knowing that death or such

---

[1] Petitioner alleges that, on the date set for trial, the prosecutor produced Frankie Diaz' written statement, which incriminated Petitioner.

harm was the likely result of his actions. He also admitted that, after the beating, he put Johnny's body in the creek and did not call for help. Instead, he fled the scene and tried to cover up what he had done.

The plea and sentencing agreement called for a sentence of twenty to forty years in prison and restitution to the family for funeral expenses. On October 25, 2006, the trial court sentenced Petitioner pursuant to the plea agreement. The sentence fell within the sentencing guideline range.

Petitioner acquired new counsel and moved to withdraw his plea, to correct the allegedly invalid sentence, and to hold a *Ginther* hearing.[2] The trial court denied all three motions, and the Michigan Court of Appeals subsequently affirmed Petitioner's conviction and sentence in an unpublished, *per curiam* opinion. *See People v. Rodriguez*, No. 281133 (Mich. Ct. App. Oct. 23, 2008). On March 23, 2009, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Rodriguez*, 483 Mich. 915 (2009) (table).

### C. The Habeas Petition and Answer

Petitioner filed his habeas corpus petition through counsel on December 27, 2009. His first claim alleges that his trial attorney was ineffective for failing to move to suppress his statement to the police. His second claim alleges that trial counsel was ineffective for failing to attempt to negotiate an amended charge so that Petitioner would have been eligible for a blended

---

[2] In Michigan, an evidentiary hearing on a claim of ineffective assistance of counsel is called a *Ginther* hearing. *See People v. Ginther*, 390 Mich. 436, 441-42 (1973) (stating that, "[w]hen a defendant asserts that his assigned lawyer is not adequate or diligent or asserts . . . that his lawyer is disinterested, the judge should hear his claim and, if there is a factual dispute, take testimony and state his findings and conclusion").

sentence.[3]  In the alternative, Petitioner argues that the prosecutor abused her discretion by failing to consider a charge which would have permitted a blended sentence and that the statutes giving the prosecutor total discretion to charge a juvenile as an adult are unconstitutional.  In his third and final claim, Petitioner alleges that his sentence is invalid because it is based on inaccurate and incomplete information and because the trial judge lacked any authority to individualize the sentence.

The State argues in an answer to the petition that Petitioner failed to exhaust state remedies for his argument about the constitutionality of the Michigan statutes giving the prosecutor total discretion.[4]  The State maintains that Petitioner's remaining claims were waived by Petitioner's guilty plea or the claims are not cognizable on habeas review and lack merit.

Having reviewed the pleadings and record, the Court believes that none of Petitioner's claims warrant habeas relief.  Furthermore, the exhaustion doctrine is not jurisdictional, *Castille v. Peoples*, 489 U.S. 346, 349 (1989), and courts may deny a habeas petition despite a petitioner's failure to exhaust state remedies.  28 U.S.C. § 2254(b)(2).  The Court therefore will

---

[3]  A blended sentence is "a delayed sentence pending defendant's performance under the terms provided by a juvenile disposition."  *People v. Petty*, 469 Mich. 108, 113 (2003).

[4]  Petitioner raised that argument in the Michigan Supreme Court, but not in the Michigan Court of Appeals.  The doctrine of exhaustion of state remedies requires prisoners to raise each habeas claim at all levels of state court review before presenting the claims in a federal habeas corpus petition.  *See* 28 U.S.C. § 2254(b)(1) and § 2254(c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 847 (1999).  This means that a habeas petitioner must first present his or her issues to the state court of appeals and to the state supreme court.  *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009) (citing *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990) (citing *Winegar v. Corr. Dep't*, 435 F. Supp. 285, 289 (W.D. Mich. 1977)).  Because Petitioner did not present his claim about the constitutionality of the Michigan statutes to the Michigan Court of Appeals, that claim is unexhausted, and the petition is a "mixed" petition of exhausted and unexhausted claims.

excuse the failure to comply with the exhaustion requirement and proceed to address Petitioner's claims, using the following standard of review.

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." *Harrington v. Richter*, __ U.S. __, __, 131 S. Ct. 770, 783 (2011).  Pursuant to § 2254, petitioner is not entitled to the writ of habeas corpus unless the state court's adjudication of his claims on the merits

> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II).  A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 131 S. Ct. at 786 (quoting *Yarborough v. Avarado*, 541 U.S. 652, 664 (2004)).  To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification" that it resulted in "an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786-87.

### III.  Discussion

#### A.  Waiver of the Claims Regarding Trial Counsel, the Prosecutor, and the Michigan Statutes on Juveniles

The first habeas claim alleges that Petitioner's trial attorney was ineffective for failing to move to suppress Petitioner's statement to the police on grounds that the statement was involuntary and taken in violation of the principles set forth in *Miranda v. Arizona*, 384 U.S. 436 (1966).  Petitioner asserts that he did not fully comprehend the nature or consequences of the charges and that the police may have violated his right to counsel and his privilege against self incrimination.

In his second habeas claim, Petitioner alleges that his trial attorney was ineffective for failing to attempt to negotiate an amended charge so that he would have been eligible for a blended sentence.  Petitioner argues in the alternative that the prosecutor abused her discretion by failing to consider a charge which would have permitted him to receive a blended sentence. Finally, Petitioner contends that the Michigan statutes, which address the prosecutor's discretion to charge juveniles as adults and which require a trial court to sentence certain juveniles as adults, are unconstitutional.

The Michigan Court of Appeals stated on review of the claims about the prosecutor and trial counsel that Petitioner waived review of the claims. This Court agrees, and although the Michigan Court of Appeals was not presented with Petitioner's claim about the constitutionality of the Michigan statutes, the Court believes that claim also was waived.

"A voluntary and unconditional guilty plea waives all non-jurisdictional defects in the proceedings," *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001), including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea, *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). As explained by the Supreme Court,

> [a] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759, 771 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973); *see also United States v. Ferguson*, __ F.3d __, __, No.10-3070, 2012 WL 603605, at *5 (6th Cir. Feb. 27, 2012) ("After the entry of an unconditional plea, a defendant 'may only attack the voluntary and intelligent character' of the plea."). Stated differently,

> [a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose the collateral attack.

*United States v. Broce*, 488 U.S. 563, 569 (1989).

Petitioner was represented by counsel at his plea, and he does not allege that his

10

unconditional plea was involuntary. In fact, he had a chance to discuss the plea agreement with his parents and his attorney, and he stated that he understood the plea agreement, the trial rights he was waiving by pleading guilty, and the penalty. He also stated that, even though he was "scared," no one was forcing him to plead guilty and that he was freely pleading guilty. His "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

Petitioner's plea appears to have been a voluntary, knowing, and intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Consequently, he has waived review of his claims about trial counsel's acts or omissions before the plea. He also has waived review of his claims about the constitutionality of the Michigan statutes and the prosecutor's alleged abuse of discretion.

### B. The Sentence

The third and final claim alleges that Petitioner's sentence is invalid because it is based on inaccurate and incomplete information and because the trial court lacked authority to individualize the sentence. The Michigan Court of Appeals stated on review of this claim that Petitioner's sentence was legally valid and that his challenge to the sentencing aspect of the plea agreement was waived.

A sentence violates due process of law if the sentencing court relied on "extensively and materially false" information that the defendant had no opportunity to correct through counsel. *Townsend v. Burke*, 334 U.S. 736, 741 (1948). Petitioner, however, has not pointed to any materially false facts that the trial court relied on at sentencing. And the contention that the trial

court lacked authority to individualize the sentence lacks merit because Petitioner agreed to a sentence of twenty to forty years as part of his plea bargain. By consenting to a specific sentence in his plea agreement, Petitioner waived the right to challenge that sentence on appeal. *United States v. Livingston*, 1 F.3d 723, 725 (8th Cir. 1993); *see also People v. Billings*, 283 Mich. App. 538, 500 (2009) (stating that, "[g]enerally, a defendant who voluntarily and understandingly entered into a plea agreement that included a specific sentence waives appellate review of that sentence")(citing *People v. Wiley*, 472 Mich. 153, 154 (2005)). Petitioner cannot "complain that his rights were violated when he received the exact sentence for which he bargained." *Lozada-Rivera v. United States*, 195 F. Supp.2d 365, 368 (D. Puerto Rico 2002).

### IV.  Conclusion

The state appellate court's opinion was not contrary to federal law, an unreasonable application of federal law, or unreasonable determination of the facts. Accordingly,

IT IS HEREBY ORDERED that the petition for a writ of habeas corpus [Dkt. #1] is DENIED.

Reasonable jurists would not debate the Court's resolution of Petitioner's claims, and the claims are not adequate to deserve encouragement to proceed further. Therefore,

IT IS FURTHER ORDERED that a certificate of appealability is DENIED. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).

s/Gerald E. Rosen
Chief Judge, United States District Court

Dated:  March 27, 2012

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 27, 2012, by electronic and/or ordinary mail.

                                    s/Ruth A. Gunther
                                    Case Manager